ALBANY,
August, 1817.

SCHUNEMAN
v.
DIBLEE.

SCHUNEMAN *against* DIBLEE.

THIS was an action for an assault, battery, and false impri- sonment. The cause was tried before Mr. Justice *Platt,* at the *Greene* circuit, in *September,* 1815.

The defendant was a major commanding a battalion of mili- tia which had been ordered out by the governor, on the requisi tion of the president of the *United States,* under the act of con- gress, authorizing a detachment of one hundred thousand men from the militia of the *United States.* This battalion was sta- tioned at fort *Gansevoort,* in the fall of 1814, and was attached to a regiment commanded by Lieutenant Colonel *Cadwallader D. Colden.* The plaintiff was a private in the same regiment, in Captain *Adams's* company, which was encamped at *Green- wich.*

On the 8th of *November,* 1814, Lieutenant Colonel *Colden* be- ing informed that the men of Captain *Adams's* company had refused to do duty, and that the piquet guard had refused to turn out, went to the company and endeavoured, by remonstrance and expostulation, and by warning them of the consequence of disobedience, to induce them to return to their duty, and gave them 15 minutes to reflect on their conduct; but this being found unavailing, he committed seven men, of whom the plain tiff was one, to a guard, and sent them to the defendant who com- manded at Fort *Gansevoort,* with orders to receive and confine them. He then gave them further time for reflection; and after five more men had been arrested, the rest of the com- pany returned to their duty. Throughout all this transaction, the language of Lieutenant Colonel *Colden* was that of remon- strance, but that of the men was contumacious and insolent, and the plaintiff appeared to act as their ringleader—was, on all oc- casions, the spokesmen, and seemed to take great pains to per- suade them from returning to their duty. When the prisoners were brought to Fort *Gansevoort,* they were confined in the guard house, which was a very small wooden building, or shed, without the walls of the fort, where prisoners could not be con- fined securely, and whence they had frequently escaped. It was a standing rule, or order, of the garrison, that prisoners who had been committed there for custody, should do the fa-

The martial law is not alto- gether a written law, but is com- posed, in part, of military usage, which must govern in all well organi- zed troops when it is not unrea- sonable, or, in opposition to special enact- ments

A soldier who has been arrest- ed and impri- soned, is not thereby exone- rated from such duty as he is ca- pable, under his restraint, of per- forming and he may be compel- led, by further restraint, to perform it.

An officer, whether civil or military, may increase the ri- gour of the con- finement of a prisoner in or- der to prevent his escape.

Where a sol- dier had been arrested, and committed to the custody of the commandant of a garrison, who ordered him to do cer- tain duty which was reasona- le, and warranted by military usage, it was held that the disobedience of the soldier jus- tified the officer in causing him to be tied to a gun, and that it was a defence to an action for a false imprison- ment.

tigue duty of the garrison.  In pursuance of this regulation, the plaintiff, with the other prisoners who were committed as before mentioned, were required to sweep the platform of the fort, to dust the guns, and to wash off the gun carriages.  For this purpose they were taken by Captain *Schuyler*, the officer of the guard, from the guard house, and marched into the fort; but when he ordered them to perform this duty, they all peremptorily refused.  Captain *Schuyler* reported their refusal to the defendant, who ordered him, if they persisted in it, to tie them to the guns of the fort.  After he had given this order, and *Schuyler* had left him to perform it, the defendant called *Schuyler* back, and directed him to be careful not to hurt the men, and not to tie them so tight as to be injured by the cords.  On this order being communicated to them, they still persisted in their refusal, saying, that as long as they were prisoners no duty could be required of them, and intimated that if they were tied they would, afterwards, have redress.  *Schuyler* then tied their hands, and fastened each man to every other gun, so that he could have about eight feet to walk in, and, at the same time, he desired them to tell him if he tied them too tight; and, on one or two of the men complaining of being tied too tight, he eased the cords.  Soon after one of the prisoners complained of being sick, and the defendant ordered him to be returned to the guard house, whence he escaped in the course of the day. When dinner time arrived, the prisoners were loosened and suffered to eat their meal, and were then tied again.  At 4 o'clock in the afternoon they were sent, by order of Lieutenant Colonel *Colden*, to the west battery, where they remained till they were tried and sentenced by a court martial.  It was proved to be the constant practice in camps and garrisons to compel prisoners to do fatigue duty, and to increase the rigour of their confinement if they were disobedient.

The judge charged the jury that, when the assault and battery and imprisonment complained of happened, the plaintiff belonged to militia called, pursuant to law, into the service of the *United States*, who were, as such, in all respects to be considered as soldiers in the army of the *United States*; that the whole of the law martial, was not written law; and it had, as well as other codes, its *lex non scripta*, which was established by military usage; and it could not be supposed that the articles of war provided for every case that might occur, or that the

soldier and officer might learn from them their relative duties in every emergency; that in cases in which they did not prescribe, the usage in well disciplined armies must govern; that if the jury believed, in this case, that the defendant's conduct towards the plaintiff was according to such military usage, then the defendant was not guilty, although the act complained of was not in pursuance of the sentence of a court martial ; that he thought, from the evidence, that the defendant was justifiable, and that nothing appeared to have been done with wantonness and passion, but that, on the contrary, the men had been treated with great lenity.

The jury, notwithstanding, found a verdict for the plaintiff for sixty dollars damages. The defendant moved for a new trial.

*E. Williams* and *J. Tallmadge*, for the defendant.

*Van Vechten* and *Cantine*, contra.

*Per Curiam.* This verdict is against law and evidence, and there must be a new trial. It is not pretended that the plaintiff was not legally imprisoned by the order of Colonel *Colden*, and the only act for which the defendant can be called in question, is the direction given to Captain *Schuyler* to tie the plaintiff to the guns of the fort, if he refused compliance with the standing rule or order of the garrison, that prisoners committed for custody should perform the fatigue duty of the garrison, such as sweeping the platform, dusting the guns, and washing off the gun carriages. It has been insisted that these orders were unauthorized, and that no services could be required of a prisoner ; and that the tying him to the guns was, in itself, a distinct punishment unwarranted by the rules and articles of war.

The court are not of the opinion that the rules and articles of war apply to, or affect this case, in any degree. On the contrary, we think that a violation of duty by a soldier, which produces his imprisonment does not exonerate him from the performance of any other duty which, under his restraint, he is capable of performing. Were it otherwise, his criminality would put him in a better situation than that of a soldier who did his duty well. An offence can never confer a privilege to be exempted from all duty; and confinement is a means used merely to prevent escape ; it certainly does not confer a privilege to be

ALBANY,
August, 1817.

DI TCHESS COT-
TON MANU-
FACTORY
v
DAVIS.

idle.  The evidence in the case proves the usage to have been, that prisoners were bound to perform such services as were required of the plaintiff, and we concur in the opinion of the judge who presided at the trial, that the whole of the law martial is not written, and that it is composed, in part, of military usage, which usage must govern in all well-organized troops, when it is not unreasonable, or in opposition to special enactments.

There must exist a right in an officer having charge of a prisoner, to use his discretion in increasing the rigour of his confinement, according to the disposition manifested ; and this extends as well to military as civil offenders.   Suppose a prisoner evinces an intention to escape, may not the officer increase his restraints ? Had the defendant, in the first instance, tied the plaintiff to the guns, by way of securing him, it could not have been pretended that such kind of imprisonment would be illegal. The very facts in the case would have shown the necessity ; for it is in proof that the guard-house was insecure, and that prisoners had escaped from it.   If, then, the defendant would be justified in ordering the plaintiff to be tied to the guns in the first instance, it will not furnish the ground of an action, as for an assault and battery and false imprisonment, that the plaintiff's conduct in disobeying his orders, and contemning his authority in a case where the service required was reasonable and proper, induced the defendant to do in the last instance, what he might have done in the first.   The defendant's will and pleasure was his legitimate rule of conduct, where the exercise of it was not in violation of the plaintiff 's rights, nor against law.

New trial granted ; the costs to abide the event of the suit.